JERRY L. WHEELER,	Case No. 13-cv-1163-pp

       Petitioner,

v.

WILLIAM J. POLLARD,

       Respondent.

**ORDER DENYING IN PART AND GRANTING IN PART PETITION TO ORDER THE RESPONDENT AND HIS STAFF FOR INMATE ACCOUNT AND LEGAL LOAN DEPARTMENTS TO GRANT PETITIONER A $50 EXTENSION OF HIS LEGAL LOAN AND PERMISSION TO USE RELEASE FUNDS (DKT. NO 35), AND REQUIRING A SECOND STATUS UPDATE**

On October 15, 2013, the petitioner filed a petition for a writ of habeas corpus. (Dkt. No. 1). That petition indicated that he was challenging his September 7, 2008 conviction and sentencing (and he was re-sentenced on May 26, 2011) in Winnebago County Circuit Court on a sexual assault charge (case no. 2005CF171). Id. The petition challenged certain actions of the state court (admission of "other acts" evidence, failure to properly instruct the jury on that evidence), the actions of his own lawyer (ineffective assistance), and the actions of the prosecutor (errors in the closing statement). Id. at 14-34.

The petition stated that the petitioner had appealed this conviction and sentence to the Wisconsin Court of Appeals on December 21, 2011, Id. at 3, and to the Wisconsin Supreme Court on March 13, 2013, Id. In the respondent's brief in opposition to the petition, the respondent argued that the

1

petitioner had not fully and fairly presented his "other acts" argument to the Wisconsin appellate courts as a constitutional claim. (Dkt. No. 18 at 4). In response to this, on April 18, 2014, the petitioner filed a motion asking the court to stay the habeas proceedings here to allow him to present his constitutional claim in state court, so that he could exhaust his state court remedies as 28 U.S.C. §2254 requires. (Dkt. No. 19).

On September 3, 2015, Judge Griesbach (the judge previously assigned to the petitioner's case) granted the petitioner the stay he requested. (Dkt. No. 31). Judge Griesbach expressed concern about the petitioner's request—he noted that the respondent had argued that the court should find that the petitioner had defaulted and let him go through the state courts and then come back to federal court. Because the petitioner hadn't asked for the stay until seven months after filing his petition, however, Judge Griesbach expressed concern about the fact that it appeared as if the petitioner was running out of time to file a new habeas petition. Judge Griesbach urged the petitioner to file his claim in state court very soon, and required that in the 30 days following the order, the petitioner had to file in federal court proof that he'd filed his claim in state court, or face possible dismissal or abandonment of the claim. Id. at 2.

On October 6, 2015, the clerk of court received a letter from the petitioner. (Dkt. No. 32). In that letter, the petitioner indicated that he'd filed a habeas corpus petition in state court (over 100 pages long, and without a file date stamp, so it's not clear when it was filed), as well as a writ with the

2

Wisconsin Court of Appeals, District 2 (again, without a file stamp, so it is not clear on what date this was filed). Id.; (Dkt. No. 32-1). After the petitioner's case was reassigned to Judge Pepper, the court issued an order requiring that by June 30, 2015, the petitioner must provide the court with a status update on his efforts to exhaust his state court remedies. (Dkt. No. 34).

On June 16, 2015, the court received from the petitioner a petition asking the court to order the respondent to give him a legal loan of $50, as well as to order the respondent to let him use the $10 he has in his release account, so that he could finish exhausting his remedies in the Wisconsin Supreme Court (he needs postage, legal supplies, etc.). (Dkt. No. 35). He attached an affidavit from Assistant Attorney General Gregory Weber, indicating that while it appeared that the petitioner had filed a petition for certiorari with the Wisconsin Supreme Court, he had not served it on the Attorney General, as required. Id. at 5-6. The petitioner also filed an affidavit in support of his request that the court intervene with regard to his legal loan. (Dkt. No. 36). He further filed a 20-page status report, accompanied by 222 pages of attachments. (Dkt. No. 37, 37-1, and 37-2). Finally, on June 19, the court received a ten-page affidavit from the petitioner, along with attachments, detailing all the difficulties he'd encountered in navigating the legal system to try to exhaust his remedies. (Dkt. No. 38).

The petitioner has filed hundreds of pages of documents in this case. He raises the same arguments in multiple documents, in extreme detail. The number and length of documents the petitioner files makes it difficult for

3

judges to figure out what, exactly, he is asking for, and why. As far as this judge can tell at this point, the petitioner is (a) trying to explain why it is taking him so long to exhaust his remedies in state court, (b) explaining—again, as he has multiple times in the case—why he believes the state judge was wrong in the way the judge treated the "other acts" evidence, (c) updating the court on the progress of his state court case, as this judge ordered, and (d) asking the court to order the Waupun staff to extend his legal loan by $50, and to allow him to use $10 from his release account. The court will (briefly) address each of these issues.

### A. Length of Time in Exhausting State Remedies

The petitioner argues—as he has at almost every point in this case—that he is not a lawyer, that he is poor, that he had no legal training, and that he is incarcerated, with limited access to the law library. He argues that these hurdles make it very difficult for him to exhaust his state remedies. He's asked the court to appoint him an attorney; the court has denied that request. Nonetheless, the petitioner continues to remind the court, over and over, of his poverty, his prison status, and his lack of legal training.

The court assures the petitioner that it knows that he is poor (indigent, as many statutes and courts call it). The court knows that the petitioner is not a lawyer, and does not have legal training. The court knows that the petitioner is incarcerated—if he weren't, it is unlikely that he would be seeking habeas corpus relief ("habeas corpus" is Latin for "you have the body," and a habeas corpus petition is a way for an incarcerated prisoner to seek the release of his

4

body from custody). Finally, the court has no doubt that the petitioner has limited access to the law library—the court hears this from inmates at institutions all over Wisconsin, with great frequency.

Unfortunately, the reality is that the vast majority of petitioners who file for habeas corpus relief are indigent, are not lawyers, have no legal training, and have limited access to law libraries. The court cannot appoint counsel for everyone who asks. So the court must look at each petitioner's filings, to determine whether that petitioner is capable of representing himself in spite of the disabilities of being a poor, incarcerated non-lawyer. Judge Griesbach found that the petitioner's pleadings demonstrated that he had ample ability to represent himself, despite his challenges; this court agrees. The petitioner is articulate—arguably *too* articulate, because frankly, he writes too much. He is not only able to explain things, but he explains them in excruciating detail. He attaches all sorts of documents to his filings, whether they are relevant or not.

The court has not accused the petitioner of taking too long in state court. It simply asked him to update the court by a date certain about whether he'd exhausted his remedies. By filing, over and over again, long explanations of how hard it is for him to navigate the legal system, the petitioner makes it harder for this court to dig down to the meat of his arguments.

The court does not mean to trivialize the difficulty of a non-lawyer, indigent, incarcerated person representing himself. It is very hard, of course—even lawyers, who have extensive legal training, often choose not to represent themselves. That's how tough it is. But it's tough on the majority of inmates,

5

and yet many of them manage to find a way (even if they can't write as articulately, and as much, as the petitioner does). The court strongly encourages the petitioner to spend less time talking about how difficult the process is for him, and more time focusing on what the court asks him to do.

B. **Explaining Why the State Court Judge Was Wrong**

The court has every single pleading that the petitioner has filed in this case—twenty months' worth. The petitioner has explained—in his complaint, in attachments, in motions, in his response to the respondent's response—what he thinks the state court judge did wrong, and why. If and when the petitioner exhausts his state court remedies, the court will review the briefs both parties have filed, and will make a decision about whether the state court violated the petitioner's constitutional rights. The petitioner does not need to continue arguing this over and over and over. He needs to finish up in state court, at which point this court will have (in fact, already has) all the information and argument it needs to make a decision.

C. **Updating the Court on the Status of the State Court Case**

The court appreciates the fact that the petitioner followed this court's May 8, 2015 order, and timely filed a status report on the progress of his exhaustion efforts in state court. The court assures the petitioner that it has no doubt that he is diligently pursuing these efforts. At the end of this order, the court will be asking the petitioner for another status update. All the court needs in that status update is a few sentences—has he served his petition for certiorari in the Wisconsin Supreme Court on the Attorney General's Office?

6

Have the parties received a briefing schedule? Have they filed briefs? Has the Supreme Court made a decision? The petitioner does not have to provide any more information than that to satisfy the court's request for a status report. He may, if he wishes, attach the Wisconsin Supreme Court's decision, once it makes that decision. Otherwise, a one-page pleading answering the above questions will be more than satisfactory.

> **D.** **Petition for Order to Extend Legal Loan and Allow Use of Release Funds**

On January 6, 2015, a member of the business office at Waupun notified the petitioner of the following: "Per DAI policy 309.51.01, annual legal loans will be capped at $50 for inmates who have not fully paid prior year's legal loans. You still owe $1,179.77 for prior legal loans." (Dkt. No. 38 at 33). The petitioner asks this court to order the respondent to give him a $50 extension for the 2015 year, and says he needs that amount to pay for pens, paper, copies and postage. (Dkt. No. 35 at 6).

Section 309.51 of the Wisconsin Administrative Code for the Department of Corrections prohibits the Department from denying inmates things like correspondence and litigation for lack of funds. It allows inmates who don't have the funds to obtain loans from the institution where they are housed. Inmates may receive only $200 per year, except that if the inmate repays part of a loan in one year, that repaid amount can be advanced to the inmate again in the same year. The superintendent may authorize a loan in excess of $200 in a year if the inmate "demonstrates an extraordinary need, such as a court order requiring submission of specified documents." The Wisconsin legislature

7

amended Wis. Stat. §301.328 in 2011. As a result of that amendment, effective July 1, 2011, the statute caps loan amounts at $100 annually (with the same provision that if the prisoner repays part of the loan in the year he gets it, he can "re-borrow" that amount without it counting against the $100 limit). *See* Johnson v. Foster, No. 13-2008, 2015 WL 2088974, at *5 n.6 (7th Cir. May 6, 2015). Wis. Stat. §301.328(1m) clearly states, "No prisoner may receive a litigation loan in any amount until he or she has repaid a prior loan in full or has made arrangements for repayment."

The Waupun business office denied the petitioner an extension on his loan because he still owed over $1,000 from loans in 2014. Waupun was not being mean or contrary; it was abiding by state law. Wis. Stat. §310.328(1m). That statute does not contain any provision allowing the warden, or anyone else, to override that requirement for good cause, or for "extraordinary" circumstances. Even if it did, the petitioner here has not demonstrated such extraordinary circumstances. This court did not order the petitioner to make copies or anything, or even to file anything. All it did was to ask him to notify the court of where he was in his state court process. There was no federal court order requiring him to file anything, or submit copies of anything.

Furthermore, the Seventh Circuit recently has reiterated that "a federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules," especially if the state court never has had the opportunity to do so. Johnson v. Foster, 2015 WL 2088974 at *6-7.

For all of these reasons, the court must deny the petitioner's request that it order the Waupun business office to extend his legal loan by $50.

Section 309.466 of the Wisconsin Administrative Code for the Department of Corrections requires the institution's business office to deduct 10% of an inmates income (up to $5,000) and deposit those funds in a "release account." Prior to the inmate's release from custody, the department may authorize release of those funds to the inmate, to help him reintegrate into the community. So—funds in a release account are to be given to the inmate when he is released, not before. The Wisconsin Court of Appeals, however, has held that "a prisoner's trust account, whether accessible upon or before release, is accessible for purposes of paying litigation costs." Spence v. Cooke, 222 Wis.2d 530, 538 (Wis. Ct. App. 1998). In order for a prisoner to have access to release account funds before release, however, "a prisoner requires a court order . . . ." State ex rel. Coleman v. Sullivan, 229 Wis.2d 804, 809 (Wis. Ct. App. 1999).

The petitioner has asked this court for such an order, and the court will grant it. The court will order that the Waupun business office should make available to the petitioner the funds in his release account, for the purpose of paying for supplies (including copies and postage) he needs to pursue his petition for certiorari in the Wisconsin Supreme Court.

## CONCLUSION

The court **DENIES** the petitioner's June 16, 2015 petition (Dkt. No. 35) to the extent that it asks the court to order the Waupun business office to extend his legal loan by $50. The court **GRANTS** the petitioner's June 16, 2015

9

petition (Dkt. No. 35) to the extent that it asks for a court order authorizing the business office to allow the petitioner to use his release account funds to purchase legal supplies, and **ORDERS** that the Waupun Correctional Institution Business office shall allow petitioner Jerry L. Wheeler access to his release account funds, for the purpose of obtaining legal supplies (including pens, paper, copies, envelopes and postage) to pursue his petition for certiorari in the Wisconsin Supreme Court.

The court **ORDERS** that by **MONDAY, AUGUST 31, 2015**, the petitioner must file a *brief* status update with this court, telling the court whether he has served his petition for certiorari on the Attorney General, whether the Wisconsin Supreme Court has set a briefing schedule, whether the parties have filed the briefs, and whether the court has issued a decision.

Ordered in Milwaukee this 23rd day of June, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

10

Case 2:13-cv-01163-PP   Filed 06/23/15   Page 10 of 10   Document 39