# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

JERRY WHEELER,

   Petitioner,

   v.                                          Case No.    13-CV-1163

WILLIAM POLLARD,

   Respondent.

---

## DECISION AND ORDER

---

The petitioner filed this habeas corpus action on October 15, 2013. The petitioner later requested and received a stay to allow him to pursue claims in state court.[1] More recently, the parties consented to the jurisdiction of the undersigned magistrate judge. For the reasons given below, the petition will be denied.

### BACKGROUND

In August 2004, fifteen-year-old C.A. reported past instances of sexual abuse by the petitioner—C.A.'s stepfather—to the Oshkosh Police Department. ECF No. 13-10 at 87-94. Winnebago County charged the petitioner with repeated sexual assault of the same child, in violation of Wis. Stat. § 948.025, based on alleged assaults that occurred in Oshkosh in 2001 and 2002. ECF No. 1 at 2. After two adjournments of the petitioner's trial, in January 2008 the State filed a motion to use "other acts" evidence at trial, which the petitioner opposed.

---

[1] The lengthy delay in adjudicating this action is addressed by the court's decision found at ECF No. 49.

The court ruled that it would allow the State to present evidence of the petitioner's history of sexual abuse of C.A. from before the charging period. ECF No. 13-8. After finding the evidence was offered for an acceptable purpose under Wis. Stat. § 904.04(2)(a) and *State v. Sullivan*, 576 N.W.2d 30 (Wis. 1998), the judge remarked that he needed to consider whether the probative value outweighed the unfair prejudice. ECF No. 13-8 at 15-17. He stated:

> Then it comes down to whether or not the probative value outweighs the unfair prejudice. And I think the *Shillcutt* case is very interesting in that aspect because it talks about the fact that although prejudicial by its nature, the prejudicial effect of the evidence was not such as to acquire [sic] exclusion, and it goes on to say that it can be – this type of evidence can be tempered with an instruction or an admonition to the jury about the purpose that it is being used for. And it's historically been my practice when other acts evidence is allowed that there be an other acts instruction put into the record at the time that the other acts is about to be put into the record so it is done up front with the jury, and I think under those circumstances – in fact, the *Shillcutt* case goes on to say: If an admonitory instruction is properly given by the Court, prejudice to the defendant is presumed erased from the jury's mind. I think that a pretty interest comment but I do think that under the circumstances that the instruction can take care of that unfair prejudice so I am going to allow the evidence of the testimony regarding the prior relationship between [C.A. and the petitioner.].

*Id.* at 18. As for logistics of giving the instruction, the judge said:

> I think maybe [the prosecutor] and [counsel] Mr. Fulleylove-Krause can talk about that where you prefer it to come in. My impression would be that that be provided before [C.A.] testifies and we just give the instruction indicating that during the course of her testimony you may hear some evidence and there is the instruction for the other acts evidence, we would have to create that, and maybe [the prosecutor] can make a sample for Mr. Fulleylove-Krause and I to look at and we'll make sure that is taken care of.
>
> . . .
>
> So on Monday morning we'll have a half hour to forty minutes before the jurors are done with their thing. We can take up that instruction at that time. I'd ask, though, that [the prosecutor] get that to Mr. Fulleylove-Krause before the end of business and the Court by the end of business on Friday so we can look at it.

2

*Id.* at 19. The trial court went on to exclude additional "other acts" evidence consisting of the petitioner's prior conviction for sexual assault of two underage girls that he believed to be of-age. *Id.* at 19-21.

After *voir dire*, the trial judge gave the jurors some opening instructions but did not include an instruction on "other acts" evidence. ECF No. 13-9 at 126-29; ECF No. 13-10 at 1-3. Following opening statements, C.A. appeared as the first witness for the State. The petitioner's counsel did not request—and the trial court did not offer—an admonitory instruction to the jury about the "other acts" evidence they would hear. ECF No. 13-10 at 44.

C.A. testified that she met the petitioner when he began dating C.A.'s mother in 1996. ECF No. 13-10 at 45. The petitioner began sexually abusing her in 1999, while she, her two brothers, her mother, and the petitioner lived in Indiana. *Id.* at 49-52. She testified that the petitioner began his advances by telling her that he wanted to teach her about sex and eventually progressed his abuse to sexual contact and sexual intercourse. *Id.* C.A. stated that the sexual abuse happened "on a nightly basis" while the family lived in Indiana but also that the petitioner would abuse her during the day after excusing her from school. *Id.* at 55-59. She further described an incident where he pulled her into the bathroom to watch him urinate. *Id.* at 59.

C.A. testified that in "about August of 2001," the family moved to Oshkosh, Wisconsin, and initially lived with her mother's brother, Miguel. *Id.* at 67. She stated that "about November" the family moved to a residence on Jackson Street in Oshkosh. *Id.* at 67-68. She testified that about a week after moving into the Jackson Street residence, she awoke to find the petitioner rubbing her leg and putting his fingers inside her vagina. *Id.* at 70-71. She stated that he did this more than once on the same night. *Id.* She stated that she tried to

3

alert her mom by screaming, but that the petitioner "put his hand over my mouth and told me to shut up." *Id.* at 72. C.A. described a second incident at the Oshkosh residence where the petitioner woke her up early in the morning and oiled her legs to "loosen her muscles" for playing football. *Id.* at 73-74. She said the petitioner progressed further and further up her legs until he put his finger inside of her; when that happened C.A. ran upstairs. *Id.* at 74.

C.A. testified that "six or seven times" at the Oshkosh residence, the petitioner came into her room naked, woke her up and had her come to the bathroom to wash his back. *Id.* at 76-77. C.A. testified that about 1:00 a.m. on December 8, 2001, the petitioner came home from a party and went into her room. *Id.* at 79. There, the petitioner pulled off her covers, pulled off her pants and underwear, and tried to put his penis inside her vagina. *Id.* She described kicking and pushing him and telling him no. *Id.* She said that later that day, he came into her room and told her that he would give her a $1,000 shopping spree if she would have sex with him. *Id.* at 81-82. She testified that the petitioner attempted assaults at the Oshkosh residence on a nightly basis and that he assaulted her "more than a dozen times" during the time they lived in the Jackson Street residence. *Id.* at 83-84.

Eventually, C.A. decided to write a letter she entitled "An Open Secret" to let her mother know about the petitioner's assaults. *Id.* at 89. C.A.'s letter referred to the petitioner as her "boogieman," but did not detail the abuse she suffered. *Id.* at 90. C.A. testified that after her mother read the letter, she and her mom had a family meeting with one of her brothers before reporting the abuse to the Christine Ann Center and eventually the police. *Id.* at 90-93.

The State also presented testimony from Dr. Beth Huebner, a clinical psychologist who worked with victims and perpetrators of sexual assault. ECF No. 14-1 at 14-16. Dr.

4

Huebner testified that delayed reporting of assaults is common. *Id.* at 16. She testified that victims often report sexual abuse to someone they view as a safe person. *Id.* at 18-19. She stated that victims might report indirectly, such as by writing a letter. *Id.* at 19. Dr. Huebner testified that a victim might report when they felt at risk of re-victimization. *Id.* at 20. She testified that a young victim might have a very hard time discerning the precise frequency of the assaults, because the abuse can be an all-encompassing part of his or her life. *Id.* at 22. Dr. Huebner testified that a family's mobility could affect disclosure and that she'd experienced a number of cases where the abuse occurred for years before the victim disclosed. *Id.* at 25. On cross-examination, Dr. Huebner testified that false reports happened in a "very small percentage" of cases— "about 2 percent." *Id.* at 33.

The jury also heard from Clarisa Cruz, C.A.'s mother and the petitioner's ex-wife. ECF No. 14-1 at 64. She testified that while the family lived in Indiana in 1998 and 1999, she commuted to work in Chicago, Illinois, leaving C.A. alone with the petitioner. *Id.* at 67-68. Cruz testified that, during the family's time in Indiana, C.A. "always didn't feel well. . . . She had a headache or a tummy ache." *Id.* at 69. She described a situation in December of 2001 where the petitioner asked her whether he could give his $900 paycheck to C.A. "to see how she will spend it, if she was responsible[.]" *Id.* Cruz testified that in August of 2004, C.A. brought her "An Open Secret." *Id.* at 81. After that, she took her daughter to the Christine Ann Center and then to the police station. *Id.* at 83.

The petitioner re-called C.A. to testify. ECF No. 14-2 at 23. The petitioner also called his friend and work colleague Timothy Kemp. ECF No. 14-3 at 11. Kemp testified that he overheard a conversation where C.A. came home complaining that her uncle, Miguel, was trying to pressure her into saying that the petitioner had touched her inappropriately. *Id.* at

5

14. The petitioner re-called Clarisa Cruz and questioned her about the relationship between the petitioner and her brother, Miguel. *Id.* at 45-47. At the morning break, the court went over the proposed jury instructions; petitioner's attorney did not propose any instructions in addition to the ones the court proposed. *Id.* at 63. Before the petitioner called his last witness, the court gave the jury general instructions. *Id.* at 69-74. The judge did not include an admonitory instruction about "other acts" evidence. The petitioner did not testify on his own behalf.

The State called three rebuttal witnesses: Miguel Cruz, Clarisa Cruz, and C.A. Miguel Cruz—C.A.'s uncle—testified that he never suggested to C.A. that she fabricate allegations about the petitioner. *Id.* at 32. Clarisa Cruz testified that she did not recall ever hearing her daughter complain that Miguel tried to get her to fabricate allegations against the petitioner. *Id*. at 38-39. C.A. testified that she did not recall having a conversation with Vincent Wheeler and that Miguel never pressured her to make up allegations because she "never really had a close relationship with [her] uncle." *Id.* at 46. After the State's rebuttal testimony, the trial judge gave the jury further instructions on the law; once again, the judge did not give an instruction about the evidence predating the charged offenses. *Id.* at 54.

In closing argument, the petitioner attempted to undermine C.A.'s credibility—questioning how no one heard the abuse given the close quarters of the residences, whether the assaults occurred "on a nightly basis," and whether Miguel had pressured her into making up the allegations. *Id.* at 87-101. The prosecutor's closing argument noted, among many other things, that "the fact of the case is that there were two people that can tell you what happened or didn't happen in the locations that [C.A.] stated the abuse happened and you had the opportunity to listen to [C.A.] testify. You had the opportunity to observe her as she did. So

6

only two people can tell you what happened." ECF No. 14-4 at 80. The jury found the petitioner guilty. *Id.* at 114.

The petitioner filed post-verdict motions, and the trial court denied it following a hearing.In his appeal, the petitioner raised four arguments. ECF No. 13-2. He argued that the trial court should not have admitted the "other acts" evidence. *Id.* at 21. He further argued that the trial judge erred when he did not give a cautionary instruction at trial. *Id.* at 27. Third, the petitioner charged trial counsel with ineffective assistance of counsel for not ensuring that the trial court gave a cautionary instruction about the other acts evidence. *Id.* at 31. Finally, the petitioner argued the prosecutor's closing arguments violated his right to remain silent and, consequently, his right to due process and a fair trial. *Id.* at 33.

On February 13, 2013, the Wisconsin Court of Appeals denied the petitioner's appeal. ECF No. 13-5. The Court of Appeals held that the "other acts" evidence at issue in this case was not "other acts" evidence at all. *Id.* at 4. "Evidence that the abuse occurred over many years and that [the petitioner] told the victim that no one would believe her and she would be removed from her family was all 'part of the panorama of evidence needed to completely describe the crime that occurred and is . . . inextricably intertwined with the crime.'" *Id.* (citing *State v. Dukes*, 736 N.W.2d 515, 524 (Wis. Ct. App. 2007). The court of appeals found that in the absence of a request from the petitioner's counsel, the trial court was not required to give a cautionary instruction about the previous sexual assault testimony. *Id.* The court also agreed with the trial judge that the prosecutor's challenged comments about "only two people" knowing what happened were fair responses to defense arguments and not comments on the petitioner's failure to testify. *Id.* at 7-8. The Wisconsin Supreme Court declined to review the petition on June 14, 2013.

7

# ANALYSIS

On October 15, 2013, the petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. §2254, alleging five grounds for relief: (1) the trial court improperly admitted "other acts" evidence; (2) the trial court never gave a cautionary instruction about "other acts" evidence; (3) trial counsel was ineffective for failing to ensure the jury heard the cautionary instruction; (4) prosecutorial misconduct during closing argument and ineffective assistance of trial counsel for failing to object to closing argument; and (5) miscarriage of justice. ECF No. 1 at 14-31. Magistrate Judge William E. Callahan—to whom the case was originally assigned—screened the petition and ordered the respondent to answer. ECF No. 5. Subsequently, the petitioner sought and received a stay of this case to allow him to present additional claims to the state courts.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief only if the state court decision was "either (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)).

## 1. Admission of Other Acts Evidence

The petitioner first argues that the Wisconsin Court of Appeals inappropriately characterized the alleged "other acts" evidence as "panorama" evidence. ECF No. 17 at 26. In his view, the jury did not need to hear C.A.'s testimony about the previous sexual abuses to establish any element of the crime charged. *Id.* at 27-30. He further argues the "other acts" were not needed to provide context for the relationship between C.A. and the petitioner

8

because the jury could still have heard that the petitioner was C.A.'s mother's boyfriend and then husband—making him C.A.'s stepfather. *Id.* at 35.

The respondent contends that federal habeas relief is unavailable on this claim because the petitioner is merely challenging the state courts' application of state evidentiary law. ECF No. 18 at 3 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Alternatively, the respondent asks the court to dismiss this ground because the petitioner did not fairly present it as a constitutional claim to the Wisconsin courts, making the claim procedurally defaulted.

Although the respondent argues procedural default in the alternative, it is generally the courts' practice to consider procedural issues prior to the merits (if the merits are considered at all). *Lieberman v. Thomas*, 505 F.3d 665, 671 (7th Cir. 2007) (addressing merits after concluding issue was procedurally defaulted). I will therefore consider the procedural default argument first.

### A. Procedural Default

AEDPA requires petitioners to exhaust their claims in state court before proceeding in federal court. See 28 U.S.C. § 2254(b)(1)(A). This means "a petitioner must 'fairly present' his constitutional claims through at least one complete round of the state's established appellate review process before presenting the claims to a federal court for habeas review." *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "For a claim to be 'fairly presented,' the petitioner must place before the state court both the controlling law and the operative facts in a manner such that 'the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on that basis.'" *Id.* (quoting *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013)). This analysis typically focuses on four factors: (1) whether the habeas petitioner relied on

9

federal cases that engage in constitutional analysis, (2) whether the petitioner relied on state cases that apply constitutional analysis to similar facts, (3) whether the petitioner framed the claims in terms so particular as to call to mind a specific constitutional right, and (4) whether the petition alleges a pattern of facts within the mainstream of constitutional litigation. *McDowell*, 737 F.3d at 482. Where a petitioner has not fairly presented his claims, the court considers the claim procedurally defaulted. *Hicks*, 871 F.3d at 531 (citing *Lombardo v. United States*, 860 F.3d 547, 555 (7th Cir. 2017)).

The petitioner's brief to the Wisconsin Court of Appeals did not alert that court to the potential constitutional component of the admission of "other acts" evidence. ECF No. 13-2. The brief did not rely on federal cases, but instead primarily cited Wis. Stat. § 904.04(2) and *State v. Sullivan*, 576 N.W.2d 30, 32-33 (Wis. 1998), as the governing standard. ECF No. 13-2 at 21. The *Sullivan* case did not apply constitutional analysis; it analyzed Wis. Stat. § 904.04(2) and *Whitty v. State*, 149 N.W.2d 557 (Wis. 1967). *Sullivan* does not mention due process or the federal constitution. The petitioner's appellate brief cites only Wisconsin cases and those cases analyze Wisconsin evidentiary law. Nor did the petitioner frame his argument so as to call the court's attention to a due process analysis; instead, his arguments called the court's attention to *Sullivan's* three-pronged test. ECF No. 13-2 at 21. Again, *Sullivan* does not mention federal due process concerns. Finally, as discussed above, evidentiary rulings (and the fact patterns associated with those rulings) are typically not the subject of constitutional litigation. See *Lemke*, 745 F.3d at 275. In short, none of the "fair presentment" factors weigh in favor of the petitioner. Thus, the claim is procedurally defaulted. The petitioner does not argue that he should be excused from the default due to cause and prejudice.

### B. Independent State Law Determination

Relatedly, the respondent also argues that, even if the issue were not procedurally defaulted, the question posed is one of state evidentiary law rather than anything implicating the Constitution. The respondent is correct: federal habeas corpus relief is available to a state prisoner only if he can demonstrate that he is in custody in violation of a federal constitutional right. 28 U.S.C. § 2254(a). The Wisconsin state courts here made decisions about Wisconsin state law. Erroneous admissions of evidence under state rules of evidence do not implicate federal habeas review "unless it is so egregiously prejudicial as to implicate constitutional principles." *Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014). "State court evidentiary rulings only implicate the Due Process Clause when 'evidence is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Perry v. New Hampshire*, 565 U.S. 228, (2012)). "[W]hen the state merely fails to limit the prosecution's evidence, the only constitutional principle to which the defendant can appeal is a catch-all sense of due process . . . and the appeal almost always fails." *Watkins v. Meloy*, 95 F.3d 4, 6-7 (7th Cir. 1996) (collecting cases). "If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Id.*

Here, the petitioner cannot show that the trial court's admission of the petitioner's previous assaults of C.A. rose to the level of a constitutional due process violation. The evidence was probative; it explained the beginning of the abusive relationship and provided context for the acts that occurred in Wisconsin in 2001 and 2002. An evidentiary error like the one alleged here does not amount to a constitutional violation unless it "produced a significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185

11

F.3d 721, 723-24 (7th Cir.1999) (finding no constitutional issue after Illinois courts found that admission of handgun into evidence was error). There is no such likelihood here.

## 2. Failure to Give Cautionary Instruction

Next, the petitioner argues the trial court erred by failing to give a cautionary instruction about C.A.'s "other acts" testimony. ECF No. 17 at 36. He says that at the final pre-trial conference, the trial court deferred a decision on *when* to give the instruction, not *whether* he would give it. He contends that the Wisconsin Court of Appeals erred by not considering the lack of a cautionary instruction when analyzing whether the prejudicial nature of the evidence outweighed its probative value. He further argues the Wisconsin Court of Appeals should have analyzed the effect a cautionary jury instruction could have had on the verdict.

"Generally, in a habeas corpus action where the petitioner alleges constitutional error due to the trial court's refusal to allow a defense instruction, the constitutional question is limited to whether the petitioner sufficiently alleges a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Leach v. Kolb*, 911 F.2d 1249, 1257 (7th Cir. 1990) (quoting *United States ex rel. Stamps v. Hartigan*, 586 F. Supp. 1575, 1577 (N.D. Ill. 1984)). "When asked to consider if the absence of a particular jury instruction offended due process it is not sufficient that the trial court erred under state law or that the omitted instruction would have been desirable." *McAlister v. Thurmer*, No. 10-C-441, 2010 WL 3860153, at *6 (E.D. Wis. Oct. 1, 2010) (citing *Estelle*, 502 U.S. at 72)). "Rather, the question the court must ask is whether, considering the context of the instructions as a whole and the trial record, the absence of the instruction 'so infected the entire trial that the resulting

12

conviction violates due process.'" *McAlister*, 2010 WL 3860153, at *6 (quoting *Estelle*, 502 U.S. at 72).

Here, as the court of appeals found, the evidence was not "other acts" evidence at all—it was simply part of the total picture of the petitioner's criminal conduct and provided necessary context to explain why the victim waited several years to report the crimes. The victim's credibility had been challenged, and the prior abuse partly explained the delay in reporting the crimes to the police. "Evidence that the abuse occurred over many years and that [the petitioner] told the victim that no one would believe her . . . was all 'part of the panorama of evidence needed to completely describe the crime that occurred.'" ECF No. 13-5 at 4 (citation omitted). Given this conclusion, it is difficult to see how the trial court could have erred for failing to provide a cautionary instruction: there would have been nothing about which to "caution" the jury. More to the point, it is impossible to conclude that the absence of a cautionary instruction here resulted in a miscarriage of justice or violated due process. *Leach,* 911 F.2d at 1257. There is no suggestion that the State exploited the pre-charging evidence or made it the centerpiece of the trial. Both sets of closing arguments directed the jury to focus on the Oshkosh allegations when rendering its verdict. Additionally, the trial judge's instructions to the jury on the elements of the offense emphasized the relevant time frame: "Before you may find the defendant guilty you must unanimously agree that at least three sexual assaults occurred between October of 2001 and May of 2002[.]"). ECF No. 14-4 at 50. Reading the record as a whole, I cannot find the trial judge's failure to give a cautionary instruction about C.A.'s testimony was an error that infected the entire trial. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.")

13

### 3. Ineffective Assistance of Trial Counsel

The petitioner also contends that he received ineffective assistance of counsel when his trial counsel did not ensure the judge gave a cautionary instruction about C.A.'s testimony. ECF No. 17 at 41. He argues that the "wholesale admission of all the 'other acts' evidence in this case without any cautionary instruction(s) did severely prejudice [the petitioner] to the point of denying him a fair trial." *Id.* at 41.

Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, the petitioner must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice. *United States v. Berg*, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). The performance prong of *Strickland* requires a petitioner to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (quoting *Strickland,* 466 U.S. at 694). Here, because the state court of appeals ruled that the admitted evidence was fair game, and because there are no constitutional infirmities associated with the admission of that evidence, it would be impossible to find either that counsel's performance was constitutionally deficient or that any prejudice resulted from counsel's failure to ask for a cautionary instruction. *Warren v. Baenen*, 712 F.3d 1090, 1105-06 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.")

Even if a more searching inquiry of counsel's performance were warranted here, as the petitioner requests, the result would not change. The trial court held an evidentiary hearing

addressing trial counsel's performance. ECF No. 14-6. When asked why he never requested an "other acts" instruction, counsel explained: "I usually do not request that instruction because I don't think it is that helpful." He elaborated:

> Usually, and in my mind like even with [the petitioner], what happens is you have the Judge telling the jury how to use the evidence against Mr. Wheeler. That is what happens in my mind. I don't think the curative instruction or the *Whitty* acts instruction is that helpful because basically what the Judge is saying, well, you can't use it to just say he is a bad person or that he did it before so he did it again this time, but that is what he said, but then the other side is but you can use it for this purpose, you can use it to find him guilty because it shows his intent, it shows motive, it shows opportunity, it shows plan, the whole works so to me that really doesn't – in my mind that really did not help Mr. Wheeler.

ECF No. 14-6 at 14-15. Counsel later explained that he intentionally asked the jury to limit itself to the Wisconsin evidence in his closing argument instead of requesting a tailored instruction from the judge. *Id.* at 15. The trial court found counsel's decision to be a matter of strategy, explaining that "I think under the circumstances of this case that that tactical decision is in the hands of [counsel]. He indicated in his testimony that that was the purpose of it and he does not like that instruction and does not ask for that on a regular basis so I'm finding that he was not deficient because there is a tactical basis for his decision." ECF No. 14-7 at 4.

The Wisconsin Court of Appeals reviewed the trial court's decision and remarked that "[d]eciding not to seek a cautionary instruction can be a strategic decision to avoid 'underscor[ing] the forbidden purpose the defendant wishes to avoid.'" ECF No. 13-5 at 5. It deferred to the trial court's credibility determination and could not find clear error in the trial court's finding regarding counsel's performance. *Id.* at 6. This conclusion was neither an unreasonable determination of the facts (*i.e.*, that counsel deliberately decided not to request an instruction) nor was it an unreasonable application of *Strickland*. The petitioner contests

15

the factual finding on the basis that counsel failed to *oppose* the instruction when it was discussed at the final pretrial conference. Yet counsel's lack of opposition to the instruction reveals no inherent inconsistency. Voicing opposition to an instruction is different than requesting an instruction; the transcript suggests that it is not the kind of instruction counsel affirmatively seeks out, but neither is it something he would necessarily oppose if the judge proposed giving it. The court's factual finding is hardly unreasonable.

As for *Strickland,* the Seventh Circuit—like the Wisconsin Supreme Court—has explicitly recognized that foregoing a limiting instruction may be a reasonable, viable trial strategy for counsel. *United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996) ("Indeed, the decision not to request a limiting instruction is solidly within the accepted range of strategic tactics employed by trial lawyers in the mitigation of damning evidence. If the lawyer cannot stop the evidence from being admitted, it is perfectly rational to decide not to draw further attention to it by requesting a motion for limiting instruction); *Biggerstaff v. Clark*, 999 F.2d 1153, 1155 (7th Cir. 1993) ("Having lost the admissibility issue, it would be reasonable for counsel to choose not to request a limiting instruction, making a tactical decision to forego the instruction to avoid further focus of the jury's attention on the unfavorable use that could be made of the evidence."). Here, *Strickland* demands that counsel's strategic decision receive deference from a reviewing court. 466 U.S. at 690 (". . . strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). And, under AEDPA, this court affords the state court determination an additional level of deference. Accordingly, this court cannot find that the Wisconsin Court of Appeals unreasonably applied *Strickland* in assessing trial counsel's performance.

### 4. Prosecutorial Misconduct & Ineffective Assistance of Counsel

16

Next, the petitioner argues that the prosecutor's closing argument improperly commented on the petitioner's decision not to testify. ECF No. 17 at 44. Relatedly, he also charges his attorney with ineffective assistance of counsel for not objecting during the closing argument.

The prosecutor made the following remarks during closing:

> The defense today wants to detract you away from the facts of this case, the details that [C.A.] shared with you and continuously shared over time with law enforcement and parts of the "Open Secret" and wants you to focus on the fact of who was in the house and what is going on.
> Ladies and gentlemen, the fact of the case is that there were two people that can tell you what happened or didn't happen in the locations that [C.A.] stated the abuse happened and you had the opportunity to listen to [C.A.] testify. You had the opportunity to observe her as she did. So only two people can tell you what happened.
> You get to decide what the emotion that you may have seen means; you get to decide whether or not she is being truthful. That's your job.

ECF No. 14-4 at 80.

Later, she reprised these remarks, noting that "[o]nly two people know what happened. What makes sense here? Ask yourself." *Id.* at 84. Finally, in rebuttal, she again stated that "[t]here are two people that can tell you what happened or did not happen in the bedroom because only two people know and I am not quite sure who I would bring in to tell you." *Id.* at 104. The petitioner argues that these comments showed the prosecutor "is at least implicitly, if not explicitly, telling the jury to convict [the petitioner] because he did not deny the charge." ECF No. 17 at 47.

"To safeguard the defendant's Fifth Amendment right against self-incrimination, the government cannot offer a defendant's failure to testify as 'substantive evidence of guilt,' whether directly or indirectly." *United States v. Willis*, 523 F.3d 762, 773 (7th Cir. 2008) (citing *United States v. Robinson*, 485 U.S. 25, 34 (1988) and *Griffin v. California*, 380 U.S. 609 (1965)).

17

However, "the Fifth Amendment does not otherwise prevent the government from commenting on the evidence adduced at trial." *Id.* For example, where "'the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by [the petitioner] or his counsel, . . . there is no violation of the privilege.'" *United States v. Ochoa-Zarate*, 540 F.3d 613, 618 (7th Cir. 2008) (quoting *Robinson*, 485 U.S. at 32).

To separate the permissible from the impermissible, courts look to the context of the statements to decide whether (1) it was the prosecutor's "manifest intention" to use the defendant's silence as evidence of guilt; or (2) the remark was of such a character that the jury would "naturally and necessarily" treat it as such. *Willis*, 523 F.3d at 773 (citing *United States v. Cotnam*, 88 F.3d 487, 497 (7th Cir. 1996) and *Robinson*, 485 U.S. at 33). The Wisconsin Court of Appeals framed the test this way:

> For a prosecutor's comment to constitute an improper reference to the defendant's failure to testify, three factors must be present: (1) the comment must constitute a reference to the defendant's failure to testify; (2) the comment must propose that the failure to testify demonstrates guilt; and (3) the comment must not be a fair response to the defense argument.

ECF No. 13-5 at 7 (quoting *State v. Jaimes*, 715 N.W.2d 656, 669-70 (Wis. Ct. App. 2006)). The court of appeals found each of the prosecutor's challenged comments to be fair responses to defense arguments. *Id.*

The petitioner does not argue that the court of appeals applied an incorrect standard. (*Jaimes,* the Wisconsin case cited by the court of appeals, itself relies on *United States v. Robinson.*) Instead, he contends that the court of appeals unreasonably determined the prosecutor's comments were fair responses to defense arguments. The court of appeals found that the comments were a fair response to the defense's strategy of "distract[ing] the jury" and suggesting that the victim had "fabricated her claims." ECF No. 13-5 at 7. The prosecutor

18

was not suggesting that the defendant was guilty because he did not testify, but merely reminding the jury that the victim had testified compellingly: "[y]ou had the opportunity to observe her as she did. So only two people can tell you what happened. You get to decide what the emotion that you may have seen means; you get to decide whether or not she is being truthful. That's your job." ECF No. 14-4 at 80. Later, in rebuttal, the prosecutor reiterated that "there are two people that can tell you what happened . . . the State cannot bring in others to state what happened in that bedroom." *Id.* at 104. This statement followed on the heels of her argument that "it is up to you to determine the credibility of the victim in this case. You had an opportunity to observe her demeanor on the witness stand." *Id.* The apparent point of these statements was twofold: the victim's testimony was the best evidence the jury had because there were no other witnesses the State could put on (at least as to what actually happened between the victim and the defendant), and the victim's testimony was credible based on *how* she testified. Emphasizing the credibility of the victim's live testimony is perfectly proper, and here, any reference to "only two people" knowing what happened was tangential in importance compared to the prosecutor's main line of argument, which was that the jury had heard compelling testimony from one of only two people who really knew what happened.

It may be argued that emphasizing the credibility of the victim's testimony while pointing out that only one other person knew what happened might bring the defendant's own failure to testify into sharp relief. Even so, this oblique and attenuated connection is, at most, a "comment[] on the evidence adduced at trial," *Willis*, 523 F.3d at 773, not a suggestion that the defendant's failure to testify means he must be guilty. Absent a suggestion that the jury take the defendant's silence as substantive evidence of guilt, a prosecutor's mere

19

reference to a defendant's failure to testify is not a Fifth Amendment violation. *Robinson,* 486 U.S. at 31.

Finally, courts agree that prosecutorial statements must be read in context, not cherry-picked. *Robinson,* 485 U.S. at 38. Here, by her own admission, the prosecutor was "long-winded" and gave a lengthy closing and rebuttal. ECF No. 14-4 at 102. The closing arguments detailed the evidence presented and asked the jury to believe the prosecution's witnesses. The petitioner here has merely selected a few bare snippets out of a lengthy closing argument and rebuttal, and these quotations do not do justice to the prosecutor's central message. In addition, it is notable that the court instructed the jury that "a defendant in a criminal case has the absolute constitutional right not to testify. The defendant's decision not to testify must not be considered by you in any way and must not influence your verdict in any manner." ECF No. 14-4 at 54; *Jaimes v. Humphreys*, 2008 WL 1927341, at *6 (E.D. Wis. Apr. 29, 2008). In this larger context, it is clear that the court of appeals properly considered the *Robinson* factors and reached a reasonable conclusion. I cannot, therefore, say that the court unreasonably applied controlling Supreme Court precedent. 28 U.S.C. § 2254(d). And, because the prosecutor's comments did not violate the defendant's Fifth Amendment rights, the petitioner cannot sustain an argument that his trial counsel was unconstitutionally deficient for failing to object during closing arguments. *Warren*, 712 F.3d at 1105-06 ("Counsel is not ineffective for failing to raise meritless claims.")

### 5. Miscarriage of Justice

The petitioner also argues that under Wis. Stat. § 752.35, this case resulted in a miscarriage of justice in which the real controversy has not been fully tried. He says that the trial court's admission of the sexual abuse testimony from the pre-charging period so obscured

20

the issues of the case such that there is a substantial probability of a different result on retrial.

Wis. Stat. § 752.35, entitled "discretionary reversal," reads:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

This issue presents an issue of state law that this court cannot review. *Estelle*, 502 U.S. at 67-68 ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In other words, this federal court does not have the authority to grant the petitioner a discretionary reversal under the cited Wisconsin state statute even if it agreed that a fundamental miscarriage of justice had occurred.

### 6. Remaining Grounds for Relief

There remains the issue of the additional claims the petitioner attempted to exhaust in the state courts. The petitioner's original petition did not list any other grounds for relief. ECF No. 1. However, in April 2014, the petitioner filed a motion to stay the petition to allow him to present other grounds for relief to the state courts. ECF No. 19. Judge Griesbach's September 3, 2014 order granted the petitioner's motion to stay but did not clarify which grounds the petitioner would attempt to exhaust. ECF No. 31.

On June 16, 2015, the petitioner filed a lengthy status update accompanied by over two-hundred pages of additional documents. ECF No. 37. In it, he cites a number of post-conviction remedies he has filed (unsuccessfully) in the state courts, including writs of habeas

corpus, a motion under Wis. Stat. § 974.06, and several *Knight* petitions. There are no motions or briefs filed in connection with the status report or any of the additional claims the petitioner raised in the state courts. The status report itself is not a substitute for briefing or motion practice; it simply provides information about the various filings the petitioner made in state court. Indeed, based on the petitioner's own more recent filing, ECF No. 47, he appears to want the court to decide his petition *as is,* that is, without further briefing on any additional claims.

In any event, as far as it is possible to tell, it appears that the arguments more recently presented to the Wisconsin state courts either echo the arguments already discussed above or were summarily dismissed, for procedural reasons, by the Wisconsin courts. ECF No. 37-1 at 3-10. The petitioner's petition to the state supreme court was denied as untimely. ECF No. 42-1 at 1-2. Any such claims are either duplicative of the claims addressed above or are procedurally defaulted.[2]

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A

---

[2] In a subsequent filing, the petitioner blames the respondent for not providing him with an extension to a legal loan. ECF No. 45. The lack of funds purportedly prevented him from timely filing his petition with the state supreme court. He does not explain how the lack of funds caused him to miss the thirty-day deadline, however. Even so, the denial of a legal loan under these circumstances would not constitute cause for the default. First, the state courts denied his petitions and appeals prior to any petition to the Wisconsin Supreme Court would have been due. Moreover, *Johnson v. Foster*, 786 F.3d 501, 510 (7th Cir. 2015) holds that the absence of a legal loan is not ground for excusing a procedural default. "He argues that this procedural default should be excused because prison administrators refused to give him a legal loan. But he's not constitutionally entitled to a subsidy, and the denial of his loan request was not an objective, external impediment to compliance with the state court's procedural requirements." *Id.*

22

certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Here, I cannot conclude that the assessment of the merits of the petitioner's claims is debatable by reasonable jurists. Moreover, where a petition is dismissed (here, in part) on procedural grounds, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Here, no reasonable jurist would find the court's procedural rulings debatable. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. A certificate of appealability is **DENIED**. The clerk will enter judgment accordingly.

**SO ORDERED** this 27th of May, 2020.


STEPHEN C. DRIES
United States Magistrate Judge

23